UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-167-GFVT

KENNETH MCINTOSH                                                              PLAINTIFF,

V.         **MAGISTRATE JUDGE'S REPORT
              AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                              DEFENDANT.

## I. INTRODUCTION

Plaintiff, Kenneth McIntosh, brings this action under 42 U.S.C. § 405(g) and 5 U.S.C. § 706, to challenge Defendant Commissioner's final decision denying his application for Supplemental Security Income [SSI]. [R. 2]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 12]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Plaintiff's Motion for Summary Judgment [R. 10] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 11] be granted, and Judgment be entered affirming the final decision of the Commissioner.

## II. FACTS & PROCEDURAL HISTORY

McIntosh was born in 1959 and was forty-seven [47] years old at the alleged onset date of his disability. [Tr. 85]. He lives with his wife, Debra McIntosh, and his daughter. [Tr. 86]. Plaintiff has a high school education with two years of vocational training. [Tr. 23]. He lists his previous work experience as a heavy-equipment operator at various coal mines from 1990 to September 13,

2006. [Tr. 111].

McIntosh alleges that his disability began on September 13, 2006. [Tr. 85]. In the Disability Report, Form SSA-3368, he claimed that he was unable to work as a result of ruptured and degenerative discs in his neck and back. [Tr. 110]. In addition, Plaintiff complains of depression with anxiety. [Tr. 13].

As a result of his impairments, McIntosh filed for disability benefits on December 26, 2006. [Tr. 84-89]. His claims were denied initially and on reconsideration. [Tr. 61-64, 68-70]. Following the denial, he requested a hearing in front of an Administrative Law Judge [ALJ]. [Tr. 71-73]. On June 2, 2008, a hearing was held in front of ALJ Roger Reynolds in Hazard, Kentucky. [Tr. 19]. Plaintiff was present and represented by counsel, Edmond Collett. [Id.]. During the hearing, the ALJ sought testimony from McIntosh and a vocational expert. [Tr. 21-46].

The ALJ ruled against Plaintiff in a written decision dated November 3, 2008. [Tr. 9-18]. The ALJ found that McIntosh suffered from the following severe combination of impairments: chronic neck and low back pain secondary to degenerative disc disease of cervical and lumbar spine; hypertension; obesity; chronic left shoulder pain secondary to hypertrophy of acromioclavicular joint with bursitis; non-insulin dependent diabetes mellitus. [Tr. 11]. Despite these impairments, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 14]. Continuing with his evaluation, the ALJ found that McIntosh had the residual functional capacity to:

> lift, carry, push and pull 20 pounds occasionally, 10 pounds frequently; sit/stand/walk 6 hours each [workday] with a sit/stand option at one hour intervals; no climbing of ropes, ladders or scaffolds; no work with hands overhead; occasional pushing/pulling

or reaching with left shoulder; no operation of foot pedal controls with left leg; no balancing or work requiring frequent turning of the head; occasional climbing of stairs or ramps; occasional stooping, kneeling, crouching or crawling; no exposure to concentrated vibration or industrial hazards.

[Id.]. The ALJ found that Plaintiff was unable to perform any past relevant work, but that "[c]onsidering [his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform." [Tr. 16]. Based on these findings, the ALJ determined that McIntosh did not suffer from a "disability" as defined in the Social Security Act. [Tr. 17]. The Appeals Council denied Plaintiff's subsequent request for review. [Tr. 1-3].

McIntosh initiated the present action on May 12, 2009, by filing a complaint in the U.S. District Court for the Eastern District of Kentucky. [R. 2]. In his Motion for Summary Judgment [R. 10], Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. Defendant Commissioner responds that the ALJ complied with the applicable regulations, and substantial evidence supports his decision to deny benefits. [R. 11].

### III. STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v.

3


Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ.  So long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted).  Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision, would be appropriate in situations where the ALJ:  ignores uncontested, compelling evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975).  Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV.  ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because: (1) the ALJ did not properly assess his credibility, (2) the ALJ improperly rejected the opinions of his treating physicians, and (3) the ALJ's hypothetical question to the vocational expert did not incorporate his alleged mental impairments.  [R. 10-2].  McIntosh's arguments will be addressed in turn.

**(A)     The ALJ's Credibility Determination**

In determining that Plaintiff could perform light work, the ALJ found that his "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [his] statements concerning the intensity, persistence, and limiting effects of these symptoms were not

entirely credible." [Tr. 13]. McIntosh argues that the ALJ failed to support his credibility determination with specific reasons. [R. 10-2 at 3-4]. The Court disagrees, and finds that the credibility determination complied with the social security regulations and is supported by substantial evidence.

> SSR 96-7p sets forth a two-step process for evaluating a claimant's symptoms:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that could reasonably be expected to produce the individual's pain or other symptoms. ...Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the claimant's subjective complaints are not substantiated by objective medical evidence, the ALJ must make a credibility determination based on a consideration of the entire case record.

SSR 96-7p, "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements." (July 2, 1996). In assessing the credibility of an individual's statements, the ALJ is to consider:

(1) The claimant's daily activities;

(2) The location, duration, frequency, and intensity of the claimant's pain and other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication which the claimant takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms;

(6) Any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

5

> (7)  Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In the present action, the ALJ complied with the regulations by providing specific reasons, supported by evidence in the case record, for not fully crediting McIntosh's statements concerning the intensity, persistence, and limiting effects of his symptoms. For instance, with respect to Plaintiff's obesity, the ALJ noted that while Plaintiff had been advised to lose weight, no surgical intervention was ever recommended. [Tr. 15; see also Tr. 337-60]. As it relates to McIntosh's mental impairments, the ALJ noted that while Dr. P.D. Patel diagnosed him with depression [see R. 317-23], the Comprehensive Care Center assessed a Global Assessment of Functioning [GAF] score of sixty-five (65), indicative of "[s]ome mild symptoms...but generally functioning pretty well." [see Tr. 269; R. 11-2]. The ALJ further noted that Dr. Patel himself assessed Plaintiff as having an "excellent" ability (no limitation) to understand and remember short, simple instructions; a "good" ability (can perform the activity satisfactorily) to remember locations and work-like procedures, carry out short, simple instructions, and sustain an ordinary routine without special supervision; and a "fair" ability (can perform the activity satisfactorily some of the time) to understand and remember detailed instructions, interact appropriately with the public, and respond appropriately to changes in the workplace. [Tr. 13; see also Tr. 321-22].

Perhaps most supportive of the ALJ's credibility determination, the ALJ observed that Plaintiff's activities of daily living were inconsistent with disability. [Tr. 15]. For instance, McIntosh claimed that he (1) drives daily, (2) cooks, (3) shops for groceries, (4) mows the lawn and uses a weed-eater, and (5) attends sporting events and church. [Tr. 13; Tr. 15; Tr. 121; Tr. 136-143].

Finally, the ALJ observed that Plaintiff's subjective complaints were not consistent with the examination of Dr. James Bean [Tr. 184-86; Tr. 233-37] or the findings of the State Agency physicians and psychologists [Tr. 223-30; Tr. 276-97], all of which indicate that he is not disabled. [Tr. 15].

Upon review, an ALJ's credibility determination is to be accorded "great weight and deference, particularly since an ALJ is charged with the duty of observing the witness's demeanor and credibility." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). As the ALJ's credibility determination complied with the pertinent regulations and is supported by substantial evidence, McIntosh's first claim of error must fail.

**(B)     The ALJ's Rejection of the Opinions of the Treating Physicians**

Plaintiff argues, in a rather conclusory fashion, that the ALJ improperly rejected the opinions of his treating physicians, Dr. James Chaney, Dr. George Chaney, and Dr. Patel. [R. 10-2 at 4-5]. These physicians indicated that McIntosh is unable to work due to disability. [See Tr. 231-32; Tr. 333-36; Tr. 300-02; Tr. 316-27]. The Court rejects Plaintiff's argument.

Pursuant to the "treating physician rule," an ALJ must give "greater weight" to the opinions of treating physicians than those of other physicians. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir. 1981). Such deference is only accorded, however, when the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." Gaskin v. Commissioner of Social Sec., 280 Fed.Appx. 472, 474 (6th Cir. 2008) (unpublished) (citing 20 C.F.R.§ 404.1527(d)(2)).

When the ALJ rejects the opinion of a treating physician, he must give "good reasons" for

7

doing so. See Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). The SSA regulations set forth certain factors the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the treating physician's opinion, (4) the consistency of the physician's opinion with the record as a whole, and (5) the specialization of the physician. 20 C.F.R.§ 1527(d)(2). The Sixth Circuit Court of Appeals has explained that the reason-giving requirement serves two purposes:

> "First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."

Rogers at 242-43.

Here, the ALJ's rejection of the treating physicians' opinions was supported by substantial evidence and complied with the reason-giving requirement. In rejecting the opinions of the treating physicians, the ALJ focused on the third and fourth factors set forth above, supportability and consistency with the record. First, the ALJ observed that the treating physicians' opinions were inconsistent with the findings of the other physicians of record. [Tr. 16]. For instance, the ALJ noted that: (1) Dr. Phillip Tibbs, an examining physician, remarked that an MRI scan of Plaintiff's back showed no evidence of disc herniation, that surgery was unnecessary, and recommended only one month of physical therapy with release back to work on a trial basis [Tr. 11; see also Tr. 362-64]; (2) McIntosh was treated conservatively by Dr. Ulmar Murad for his back pain, obesity, and hypertension [Tr. 11; see also Tr. 337-60]; and (3) a "Pain Profile Report" of Plaintiff conducted at

the direction of Dr. John Gilbert, a treating physician, was in the average range for pain patients. [Tr. 12; see also Tr. 374-78].

The ALJ further found that the treating physicians' opinions were inconsistent with the findings of Dr. Bean, an examining physician. [Tr. 12]. Dr. Bean documented that McIntosh had normal strength in his deltoids, biceps, and triceps, and found no particular limitation in the range of motion of his left shoulder. [Tr. 184-86]. Dr. Bean also noted that surgery would not benefit Plaintiff, and determined that he was limited to light or sedentary occupational activities. [Tr. 234-36].

Finally, the ALJ noted that the treating physician's opinions were inconsistent with: (1) the findings of the non-examining state agency physicians, which indicate that Plaintiff is capable of performing light work [Tr. 15-16; see also Tr. 223-30; Tr. 276-97]; (2) McIntosh's activities of daily living [R. 15; see also Tr. 121; Tr. 136-143]; and (3) the notes from the Comprehensive Care Center. [Tr. 16; see also Tr. 262-74].

Having reviewed the record, the Court finds that substantial evidence supported the ALJ's rejection of the treating physicians' opinions, and that he complied with the reason-giving requirement of 20 C.F.R.§ 404.1527(d)(2). The ALJ provided ample reasons for disregarding the physicians' opinions, specifically focusing on the lack of supportive evidence, as well as the evidence which contradicted the opinions. Accordingly, Plaintiff's second claim of error fails.

**(C)    The ALJ's Hypothetical Question to the Vocational Expert**

McIntosh contends that the ALJ's hypothetical question to the vocation expert was defective because it did not incorporate his alleged mental impairments. [R. 10-2 at 5-6]. Specifically, Plaintiff argues that the ALJ "failed to properly mention the fact that [he] had been found to have

9

serious mental problems by Dr. Patel." [Id. at 6]. McIntosh's argument is without merit.

During the evidentiary hearing, the ALJ posed the following hypothetical to the vocational expert:

> [A]ssume first of all a person of Mr. McIntosh's age; education; experience; with a capacity to lift, carry, push or pull 10 pounds on a frequent basis, up to 20 pounds on an occasional basis; standing, walking or sitting up to 6 hours each, but with a sit and stand option at one hour intervals; no climbing of ropes, ladders or scaffolds; no work with hands overhead; occasional pushing or pulling with the left shoulder; no operation of foot pedal controls with the left leg; no balancing; no work requiring frequent turning of the head; occasional climbing of stairs or ramps; occasional stooping, kneeling, crouching or crawling; no exposure to concentrated vibration or to industrial hazards. ...Are there jobs that could be performed within those limitations?

[Tr. 44]. The vocational expert answered in the affirmative, stating that this individual could perform the job of a counter clerk (7,500 jobs regionally and 560,000 jobs nationally), information clerk (2,700 jobs regionally and 182,000 nationally), general clerk (9,200 jobs regionally and 664,000 nationally), and security guard (1,300 jobs regionally and 143,000 nationally). [Tr. 44-45].

An ALJ's hypothetical questions "need only incorporate...those limitations which the ALJ has accepted as credible." Infantado v. Astru, 263 Fed.Appx. 469, 476-77 (6th Cir. 2008) (unpublished) (citing Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)). As noted *supra*, the ALJ rejected the mental limitations assessed by Dr. Patel because they were inconsistent with the record. [Tr. 15-16]. As substantial evidence supports the ALJ's rejection of Dr. Patel's findings, the ALJ was not required to incorporate them into the hypothetical question.

In support of his argument that the ALJ's hypothetical question was defective, McIntosh relies on Reinhart v. Schweiker, 590 F.Supp. 78, 85 (W.D. Mich. 1984). In Reinhart, the court held that an ALJ erroneously rejected a claimant's subjective complaints of pain, and thus his hypothetical

10

question to a vocational expert omitting those complaints was defective. Id. at 85-87. Reinhart is easily distinguishable from the instant matter. Here, unlike in Reinhart, substantial evidence supports the ALJ's rejection of Plaintiff's alleged impairment. Thus, the ALJ's decision to exclude McIntosh's alleged mental impairments from his hypothetical question was not error.

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny benefits. Therefore, for the reasons set forth above, it is recommended that Plaintiff's Motion for Summary Judgment [R. 10] be DENIED, Defendant's Motion for Summary Judgment [R. 11] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)©); Fed. R. Civ. P. 72(b)(2).

Signed January 25, 2010.



Signed By:
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**